Plaintiff instituted this suit for damages arising out of an alleged willful, wanton and malicious assault by the striking and shooting of plaintiff by defendant J. Birchey Sevario, an alleged deputy Sheriff for the Parish of East Baton Rouge. He has made defendants the said Sevario, Newman H. de Bretton, the Sheriff of the Parish of East Baton Rouge, and the Globe Indemnity Company of New York, the surety on the bond of the Sheriff. The *Page 116 
Sheriff and his surety filed an exception of no cause of action, and alternatively an exception of no right of action. The lower court sustained the exception of no cause of action and dismissed plaintiff's suit as to the Sheriff and his surety. Plaintiff has appealed.
The pertinent allegations of plaintiff's petition are as follows:
"5. On the early morning of September 13, 1944, defendant J. Birchey Sevario, duly appointed deputy by Sheriff Newman H. de Bretton, while acting in his official capacity as Deputy Sheriff and performing an official act authorized by law, but performing said official act in an improper and unfaithful manner, seriously and permanently injured petitioner and caused petitioner to suffer intense and excruciating physical pain and mental pain and anguish, loss of blood and shock, and expenses and loss of wages, all as more fully set out hereinafter.
"6. On the evening of September 12, 1944, at about 11 o'clock petitioner went with one Clinton Stokes to the Silver Star, a night club in the Parish of East Baton Rouge, where they met Harold Stokes, son of Clinton Stokes, and three ladies who were with him, and where said petitioner and others engaged in conversation and had a few drinks of beer.
"7. About midnight on the night of September 12, 1944, petitioner and the aforesaid parties he was with went from the Silver Star on the Plank Road to the Golden Slipper, another night club on North Boulevard in the Parish of East Baton Rouge, where they obtained a table and had a few drinks and engaged in conversation and dancing until about 1:30 A.M. on the morning of September 13, 1944, when petitioner and his companions started to their respective places of abode.
"8. At about 1:30 A.M., September 13, 1944, as petitioner and the aforesaid parties were about to leave the Golden Slipper, one of the ladies in the party refused to get into the car and started an argument over the seating arrangement in the car.
"9. During said argument, a bystander, unknown to petitioner, came up to the automobile of petitioner and his companions and tried to join in the argument, stating that he was going to get into the fight if there was going to be a fight; said person was intoxicated and began cursing petitioner and other members of the party, using loud and obsene language, adding to the disturbance already created; whereupon Clinton Stokes, who was with petitioner, pushed said drunken stranger down and out of the way.
"10. While this argument and disturbance continued another party came up who was then unknown to petitioner but who petitioner has since learned was J. Birchey Sevario, which party said, 'Let's don't have any trouble'; and said party, J. Birchey Sevario, was instrumental in quieting the disturbance.
"11. During this disturbance one of the ladies who had previously been in the party of petitioner and who had already entered the automobile, became frightened and got out and left the scene and did not return.
"12. Shortly thereafter, as petitioner and the other four persons in the party with him again prepared to leave the Golden Slipper and were about to drive away, petitioner saw the drunk man referred to in Paragraph 9 hereinabove, who had cursed and abused him and others in his party, sitting in a parked automobile in front of the Golden Slipper; petitioner requested the driver to stop the car petitioner was in and petitioner got out and walked up to the parked automobile in which the intoxicated person was seated, whose name was unknown to petitioner, it being petitioner's intention to demand an apology from said drunk man for his curses and abuses.
"13. As petitioner walked up to the side of the automobile and stood outside the car said drunk man was seated in, and was having heated words with him, petitioner was struck a severe blow on the right back side of his head with a stick or club by someone not seen by petitioner, whereupon petitioner immediately turned around and attempted to grab at whoever had hit him, not knowing who had struck him.
"14. As petitioner turned around, he saw a man with a stick or club, whom petitioner did not recognize but has since learned was J. Birchey Sevario, and petitioner stepped forward and made an effort to grab his assailant who then retreated not more than two paces and drew a pistol and immediately started shooting petitioner, and shot petitioner five times; the bullets striking petitioner in the chest, the right arm, in the right lower abdomen and in the right thigh. *Page 117 
"15. Petitioner learned after the shooting that the blow on the back of his head was struck by and the shooting was done by defendant, J. Birchey Sevario, Deputy Sheriff, in and for the Parish of East Baton Rouge, duly appointed and commissioned by defendant, Newman H. de Bretton, Sheriff.
"16. Said Deputy Sheriff, J. Birchey Sevario was, prior to and at the time of said attack and shooting, acting as and in the capacity of Deputy Sheriff, and as the representative of the Sheriff of East Baton Rouge Parish, and said deputy sheriff was performing an official act authorized by law in that he was attempting to keep the peace and break up a disturbance as required by law.
"17. Although said Deputy Sheriff J. Birchey Sevario was or may have been justified in taking petitioner and others into custody, and breaking up any disturbance that existed, the action of said Deputy Sheriff J. Birchey Sevario, in striking petitioner on the head from the rear and shooting petitioner was grossly reckless, careless and wrong and constituted an unfaithful and improper performance of an official duty, which said Deputy Sheriff has undertaken to perform in his official capacity as a Deputy Sheriff; said striking and shooting were done in conjunction with and as part of said Deputy Sheriff's attempt to keep the peace and break up what he evidently considered a public disturbance, but said striking and shooting were uncalled for and unnecessary and amounted to gross, willful and wanton negligence, ruthless disregard for the rights and safety of others and gross and willful misfeasance and improper and unfaithful performance by said Deputy Sheriff of an official act, for which wrongful, unfaithful and improper acts the defendants, Newman H. de Bretton, Sheriff of East Baton Rouge Parish, and Globe Indemnity Company of New York, surety, are liable jointly and insolido with said Deputy Sheriff, J. Birckey Sevario."
[1] In the case of Sanders v. Humphries, 143 La. 43, 78 So. 168, the Supreme Court held that a sheriff is not liable, nor is the surety on his official bond liable, in damages for personal injuries to a citizen, inflicted recklessly by a deputy sheriff, unless it was done in violation of an official duty, or in an unfaithful or improper performance of an official act.
We held in the case of McVea v. Day, 6 La. App. 382, that, in order to hold a sheriff liable for a wrong committed by his deputy, such wrong must have been committed while in the actual performance of an official act, that such wrong must be directly connected with and because of an official act, and must have resulted from the manner in which such official act was performed.
In the case of Gray v. De Bretton, 184 So. 390, we quoted with approval, the holding of these cases. This case was considered by the Supreme Court on a writ of certiorari.192 La. 628, 188 So. 722, 725. In that case, the Supreme Court again repeated the holding of the two cases, supra, in these words: "In order to impose liability on the sheriff and his official surety for the alleged wrong of the deputy sheriff, the petition should set forth facts showing that the alleged wrongful act of the deputy was committed while he was in the performance of an official duty and must have resulted from the wrongful manner in which such official duty was performed."
[2, 3] Article 5 of plaintiff is a mere conclusion of law. The only facts which he sets out to bear out that conclusion of law are to be found in his allegations contained in Articles 6 to 15, inclusive. The facts as set out in these articles do not bear out his conclusion of law as alleged in Article 5. Article 16 is likewise a conclusion of law, and the articles 6 to 15, inclusive, cannot be said to bear out these conclusions of law. Be that as it may, and admitting that the facts alleged in Articles 6 to 15 bear out such conclusions of law, we feel that these allegations of fact are destroyed by the allegations in Article 17, which admit that Sevario had no legal right to act in the manner in which he did.
[4] Our conclusion is that, considering the allegations quoted supra, and the jurisprudence, also quoted supra, the plaintiff has failed to disclose a cause of action as against the Sheriff and his surety. From the facts as disclosed by him, it is readily deducible that Sevario was merely a guest of the night club wherein plaintiff was also a guest. There is no allegation that the sheriff had delegated Sevario as a deputy thereat for the purpose of keeping the peace. The mere fact that Sevario was present at the night club could not and would not bind the sheriff for any acts *Page 118 
done by the said Sevario. Furthermore, it is not alleged as a fact that Sevario committed the alleged wanton assault upon plaintiff in the attempt to put plaintiff under arrest. To the contrary, it appears to us that Sevario's action was more in the nature of a private individual who was more interested in the fact that he did not care to see harm done to another private individual, who, from plaintiff's allegation, was so drunk that he could not protect himself from plaintiff's attack. Under our jurisprudence the Sheriff is not responsible for the private or negligent acts of his deputy.
It is to be noted that plaintiff fails to make the allegation of fact that Sevario was attempting to arrest him for a misdemeanor or disturbing the peace. To the contrary, from his allegations he was struck from behind by Sevario without warning of any kind and was shot without knowing who was his assailant.
For these reasons, the judgment below is affirmed.